UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAUNA W.,

                        Plaintiff,

v.                                                                                             CASE # 20-cv-06758

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | MARIA PIA FRAGASSI<br>  SANTANGELO, ESQ.<br>KATHRYN L. SMITH, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

**I.      RELEVANT BACKGROUND**

    **A.      Factual Background**

Plaintiff was born on August 23, 1984 and has at least a high school education. (Tr. 162, 156). Generally, plaintiff's alleged disability at the time of application was fibromyalgia diagnosed in September 2017, chronic migraines diagnosed in 2014, chronic back pain, GERD, and bone on bone rubbing in her knees. (Tr. 155). Her alleged onset date of disability January 2, 2016, and her date last insured was December 31, 2016. (Tr. 162).

    **B.      Procedural History**

On December 20, 2017, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act. (Tr. 126). Plaintiff's application was denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On August 12, 2019, plaintiff appeared before ALJ Brian LeCours. (Tr. 23-52). On September 5, 2019, ALJ LeCours issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 12-19). On July 30, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

    **C.      The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 2, 2016 through her date last insured of December 31, 2016 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (20 CFR 404.1520(c)).

4.  The claimant was not under a disability, as defined in the Social Security Act, at any time from January 2, 2016, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(c)).

(Tr. 12-18).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Argument

Plaintiff asserts two errors requiring remand. (Dkt. No. 12 [Pl's Mem. of Law]). First, plaintiff argues the ALJ erred by failing to develop the record. (*Id*. at 11). Second, plaintiff asserts the ALJ erred in finding that plaintiff had no medically determinable impairments. (*Id.* at 13).

### B. Defendant's Arguments

Defendant first responds that the ALJ fulfilled his affirmative duty to assist plaintiff in the development of her complete medical history. (Dkt. No. 13 [Def.'s Mem. of Law] at 12). Defendant next responded that the ALJ properly concluded the evidence did not establish plaintiff had a medically determinable impairment during the relevant period at issue. (*Id.* at 19)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.  ANALYSIS

### A. Duty To Develop

At the hearing, plaintiff's counsel informed the ALJ that there were outstanding neurology records from Westfall Road clinic. (Dkt. No. 12 at 11, *referring to* Tr. 29). As an initial matter, plaintiff has been represented by the same counsel since December 2017, when she filed her claim. (Tr. 23 (counsel at hearing), 59-60 (fee agreement and appointment of representative dated December 2017)). On July 17, 2019, one month prior to the hearing, plaintiff first notified the Agency of the Westfall Road treatment records dated January 2, 2015 to present, yet those records were not requested by counsel until June and July 2019. (Tr. 191). At the hearing, the ALJ also emphasized to plaintiff's representative there were no medical records from the period at issue. When the ALJ tried to elicit testimony about the possible missing records, counsel replied that she was relying on plaintiff's report of treatment, however plaintiff testified she had seen a neurologist once "quite some time ago" and was not able to verify it was even during the period at issue. (Tr. 36-37).

The Agency and the ALJ appropriately developed the record as evidenced by the administrative record. At the time of plaintiff's application, she listed providers who had treated her during the relevant period and the Agency dutifully requested those records during

development of the claim. (Tr. 158-159). In January and February 2018, the Agency contacted plaintiff's reported treating sources seeking her treatment records during the relevant period, including Dr. Buckley/Gates Medical and Strong West Orthopedics. The medical records received were devoid of any treatment notes contemporaneous to the period at issue. (Tr. 55-56, 158-59). *See* 20 C.F.R. § 404.1512(b)(1)(i)-(ii). The Agency only received treatment records from Dr. Buckley dated September 13-14 and November 3, 2017 (Tr. 207-10) and from Strong West Orthopedics dated September 8, 2017 (Tr. 214-16). The Agency further secured treatment records dated September 15, 2017 from URMC Strong Memorial Hospital's Oral Surgery department (Tr. 219-26); and REDCK Rheumatology dated October 20 and November 14, 2017. (Tr. 227-38, 240-43). Added to the administrative record before the hearing were the following additional treatment records received from counsel in June 2019:

> URMC's Clinton Woods Otolaryngology dated November 21 and December 3, 2018 (Tr. 276-84 (Exhibit 6F)); URMC Strong Memorial Hospital's GI & Hepatology department dated September 2015, and from May 2018 to April 2019 (Tr. 285-315 (Exhibit 7F)); Unity Hospital Emergency Department for visits on April 13 and November 9, 2018 (Tr. 318-70 (Exhibit 9F)); Dr. Buckley/Gates Medical dated April 2, 2018 and January 27, 2019 (Tr. 371-77 (Exhibit 10F)); REDCK Rheumatology dated October 20 and November 14, 2017 (additional records) (Tr. 378-437 (Exhibit 11F)); and Rochester General Medical Group's Allergy and Immunology clinic dated January 22, 2019 (Tr. 438-55 (Exhibit 12F)). Notably, counsel's request for records from Strong West Orthopedics yielded no additional treatment records (Tr. 316-17 (Exhibit 8F)).

The ALJ explicitly stated there were no medical records for the period at issue in the administrative record and encouraged counsel to identify which exhibits show the medically determinable impairment prior to the date last insured (DLI). (Tr. 27). Counsel referenced exhibits but the ALJ distinctly explained the index showing dates of service were not accurate and the actual records were not from the period at issue. (Tr. 28-29). The ALJ informed counsel that he was leaving the record open for a week until August 19, 2019, for the receipt of any additional records. (Tr. 29-30, 50, 191). The ALJ also requested counsel to submit by this date an amended

pre-hearing memorandum identifying any medical determinable impairments established by the record evidence on or before plaintiff's date last insured (DLI). (Tr. 30, 50). In actuality, a decision was not rendered for over three weeks, during which period no additional records or a request for further time or assistance with securing any outstanding records were received from either plaintiff or counsel. (*See* Tr. 15-19). Counsel also did not amend the pre-hearing memorandum and identify any medically determinable impairments in the administrative record on or before plaintiff's DLI, as requested by the ALJ. In plaintiff's October 1, 2018, request for review of the ALJ's decision, she neither proffered additional treatment records related to the relevant period, nor identified any treatment records that were outstanding or missing, nor argued what medically determinable impairment(s) the evidence demonstrated during the period in question. (*See* Tr. 1, 197-98).

In sum, the ALJ properly developed the record. As stated previously, the administrative record was kept open for the submission of medical records. *Brown v. Colvin,* No. 3:14-cv-1784(WIG), 2016 U.S. Dist. LEXIS 66527, at *7 (D. Conn. ·May 20, 2016 ) ("When an ALJ holds open the record . . ., the ALJ will be found to have fulfilled her duty to develop the record."); *Perry v. Saul,* 2020 WL 5544347, at *5 (W.D.N.Y. Sept. 16, 2020) (finding ALJ did not fail to develop the record where at the hearing the claimant's attorney advised of outstanding records she was trying to locate, the ALJ agreed to hold the record open to allow the attorney to submit the records, but the attorney neither submitted the records nor sought the ALJ's assistance in obtaining the records, "including requesting the ALJ exercise her authority … to subpoena such records....") *(citing Jordan v. Comm'r of Soc. Sec.,* 142 F. App'x 542, 543 (2d Cir. 2005)). Plaintiff never asked for more time to submit additional records, nor did she inform the Appeals Council that there were outstanding records. If they were requested by the plaintiff, as stated in her pre-hearing memorandum, it would have been appropriate for the ALJ to "satisfy the duty to develop the record

by relying on the plaintiff's counsel to obtain additional medical documentation." *Wozniak v. Comm'r of Soc. Sec.,* No. 1:14-CV-00198, 2015 WL 4038568, at *9 (W.D.N.Y. June 30, 2015); *Myers ex rel. C.N. v. Astrue,* 993 F.Supp.2d 156, 163 (N.D.N.Y. 2012).

Furthermore, plaintiff has not established there was an obvious evidentiary gap. *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *see id.* at 79, n.5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim"). Plaintiff testified that she saw a neurologist once in the past for her migraine headaches who prescribed medication possibly during the relevant period but she still could not remember precisely when. (Tr. 36-37). As to her testimony that her treating physician, Dr. Buckley subsequently switched this migraine medication, also perhaps during the relevant period, the ALJ established with plaintiff and counsel that all treatment records from Dr. Buckley/Gates Medical had been received, and none revealed treatment during the period at issue. (Tr. 35).

**B. Medically Determinable Impairments**

Plaintiff bears the ultimate burden of proving that she was disabled throughout the period for which benefits are sought, *i.e.*, from her January 2, 2016, alleged disability onset date through her December 31, 2016 date last insured. *See* 20 C.F.R. § 404.1512(a); *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982). As clearly conveyed by the ALJ at the hearing, the record lacked any objective medical evidence contemporaneous to the relevant period to establish a medically determinable impairment. (*See* Tr. 26, 29, 34-35, 50). A disabling physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *see*

20 C.F.R. § 404.1521 (same). A physical or mental impairment additionally "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. The ALJ specifically noted that the two gastrointestinal treatment records from September 2015, pre-dating the period at issue, without follow-up until May 2018, did not demonstrate a medically determinable impairment prior to the expiration of plaintiff's DLI. (Tr. 27, 34-35; *see* Tr. 286-96).

Although evident from the hearing transcript that the ALJ had carefully reviewed the evidence of record, the ALJ included an analysis of the allegedly disabling impairments in his decision. (Tr. 18). The ALJ identified evidence that in September 2015 plaintiff sought treatment for abdominal cramping, but diagnostic testing revealed normal findings, and she did not return to her gastroenterologist until May 2018, suggesting that the frequency, duration, and intensity of her symptoms was not as limiting as alleged. (Tr. 18; *citing* Tr. 286-96). *See* 20 C.F.R. § 404.1529(c); SSR 16-3p. The ALJ next pointed out that during period at issue from January 2 through December 31, 2016, there was no evidence of treatment. (Tr. 18). Giving consideration to the entire record as whole, including that several physicians acknowledged plaintiff's past medical history, the ALJ appropriately concluded that the record was simply devoid of any objective findings during the relevant period establishing ongoing and continuous treatment and, more importantly, a medically determinable impairment of disabling severity. (Tr. 18). The ALJ accordingly analyzed that the plaintiff did not seek regular, ongoing treatment for any complaints and there was insufficient medical basis for a finding of disability. (Tr. 18). *See* 42 U.S.C. § 423 (a)(1)(A), (c)(1) (d)(3), (5)(a); 20 C.F.R. §§ 404.131, 404.315(a)(1), 404.320(b)(2), 404.1521, 404.1529(b); SSR 16-3p; *Walton*, 535 U.S. at 216-22; *Yuckert*, 482 U.S. at 146 n.5; *see also Shrecengost*, 2015 WL 5126117, at *3 (The claimant failed in his burden of furnishing evidence establishing a severe medically determinable impairment on or before his DLI at step two of the sequential evaluation when he

did not seek treatment for a mental impairment until 25 days before the DLI's expiration and almost one year after the alleged onset date).

Contrary to plaintiff's contentions, a school record from 2000 that references abdominal pain and two treatment records from prior to the period at issue that indicate plaintiff was referred for and/or underwent diagnostic GI studies, prescribed GERD medication, and advised to adhere to a GERD lifestyle and dietary modifications, did not constitute evidence meeting the statutory and regulatory requirements establishing a medical determinable impairment, as they did not constitute "objective medical evidence from an acceptable medical source" 20 C.F.R. § 404.1521. In September 2015, physician assistant (PA) Sarah Enslin observed no abnormal clinical findings and offered no diagnosis at the examination but merely reported that plaintiff presented for an evaluation of her GI symptoms. (Tr. 287). To be sure, plaintiff was referred for an esophagogastroduodenoscopy (EGD) with corresponding biopsies, but the results were normal and the attending gastroenterologist Dr. Jonathan Huang, likewise, offered no diagnosis. (Tr. 289-90). Plaintiff did not subsequently seek follow-up of her GI symptoms until years later in May 2018, and nearly one and one-half years after her DLI expired. (*See* Tr. 292). The ALJ appropriately still considered the post-DLI records and concluded that plaintiff's failure to follow up with her gastroenterologist until May 2018 was demonstrative that her symptoms were not of the limiting severity as alleged. (Tr. 18). Plaintiff failed to establish by objective medical evidence, from an acceptable medical source, that she had an impairment during the period between her alleged onset date and date last insured.

**ACCORDINGLY, it is**

>   **ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further
>
>   **ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**.

Dated: May 19, 2022  
Rochester, New York

_J. Gregory Wehrman_  
HON. J. Gregory Wehrman  
United States Magistrate Judge